**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

| | | |
|---|---|---|
| **Erin Patacsil**<br>**407 Tennessee Ave**<br>**Alexandria, VA 22305**<br><br>**Plaintiff**<br><br>**v.**<br><br>**Terence Emmert, Acting Secretary**<br>**U.S. Department of the Navy**<br>**Agency**<br>**OFFICE OF THE SECRETARY OF THE NAVY**<br>**Pentagon, Room 4E686**<br>**Washington, DC 20350**<br><br>**Defendant** | ) | **Case No. _________**<br><br>**Jury Trial Demanded**<br><br>**COMPLAINT AND PRAYER FOR RELIEF** |

Plaintiff Erin Patacsil ("Plaintiff" or "Ms. Patacsil") files this civil complaint and Jury Demand against Defendant, Terence Emmert, Acting Secretary, U. S. Department of the Navy.

In support, Ms. Patacsil states the following facts and allegations, based on personal knowledge as to Plaintiff's own conduct, and on information and belief as to the actions of others.

**PARTIES**

1. Plaintiff Erin Patacsil is an individual, and at all relevant times, a resident of Virginia. She is employed by the Department of the Navy and stationed at Washington Navy Yard.
2. Defendant Terrance Emmert is Acting Secretary of the Department of the Navy.
3. This action arises from acts of gender and age discrimination that occurred in the District of Columbia as will be described concisely later below.

## JURISDICTION AND VENUE

4. This Court is vested with jurisdiction over Defendant because this action is brought under Title VII of the Civil Rights Act of 1964, as codified in 42 U.S. Code 2000e to 2000e-17 (gender) and the Age Discrimination in Employment Act of 1967 (ADEA) as codified in 29 U.S. Code 621.
5. Jurisdiction is invoked pursuant to 28 U.S.C. section 1331.
6. Venue of this action is proper in this court, pursuant to 28 U.S.C. section 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## STATEMENT OF FACTS

7. Ms. Erin Patacsil is a white female over the age of 40 years old. Ms. Patacsil began working as a Supervisory Program Manager, NH-0340-04, at the Washington Navy Yard at Department of the Navy (DON), Strategy Systems Programs (SSP), Conventional Prompt Strike (CPS) Program Office starting on December 3, 2023.
8. Ms. Patacsil has worked as a government civilian employee for almost 16 years.
9. In each of her previous performance appraisals, issued by the DOD and DHS, Ms. Patacsil was rated as "exceptional."
10. Ms. Patacsil has no record of misconduct.
11. Despite her exceptional marks and repeated accolades from supervisors, from the first day of her relocation to DON SSP CPS, Ms. Patacsil felt she was treated differently.
12. Mr. Walter Schostak hired Ms. Patacsil after interviewing her over the phone.
13. Mr. Schostak looked visibly disappointed the first time he met her in person.
14. Ms. Patacsil's first level supervisor, Mr. Schostak, is a white male under the age of 40.

15. At or around the same time as Ms. Patacsil's relocation to SSP, another woman was placed under Mr. Schostak's supervision.

16. The Second woman ("WF2") was to serve a one-year tour as a Naval reservist officer.

17. WF2 was also over the age of 40 years old, also employed full time with DON SSP, at Cape Canaveral, Florida, as a government civilian employee.

18. WF2 relayed to Ms. Patacsil that she too felt disrespected by her supervisor Mr. Schostak.

19. WF2, having worked in both enlisted and civilian capacities, expressed that she had never been treated with such disrespect and hostility as when working under Mr. Schostak.

20. WF2 spoke to feeling harassed due to her age, noting his obvious favoritism towards the employees under age 40.

21. Both women expressed that Mr. Schostak showed little to no respect for them and their institutional knowledge.

22. Rather than assign her duties commensurate with her experience and rank, she was given menial work more appropriate for an entry level officer, not a Lt. Commander with a PhD. When she complained, VADM Wolfe did not take action to address the problem.

23. Mr. Schostak directly supervised three Supervisory Section Head Program Managers. Two of these subordinates were under the age of 40. Ms. Patacsil was over 40 years of age.

24. Mr. Schostak clearly gave the younger subordinates preferential treatment while treating Ms. Patacsil in a different and hostile manner.

25. Despite his clear misgivings, Mr. Schostak never raised performance or misconduct issues with Ms. Patacsil during the entirety of her time with CPS.

26. Despite never raising the issue with Ms. Patacsil, Mr. Schostak saw fit to bring his concerns to Human Resources – specifically HR Specialist Dalita Piper.

27. For some unknown reason, Mr. Schostak chose to include CDR Jason Ponder, a white male under the age of 40, in these discussions with Ms. Piper.

28. This was wildly inappropriate, considering CDR Ponder was neither in Ms. Patacsil's supervisory chain, nor assigned a supervisory position of any kind.

29. Ms. Piper, in a sworn statement, disclosed that in the timeframe from December 2023 to January 2024, "Management received an email from her previous employer stating she was not the best employee."

30. Ms. Piper continued, "Management wanted to know what to do with that information."

31. Instead of reporting the supervisor's misconduct, Ms. Piper replied, "I told them nothing and to act like it didn't exist as she was already on board with SSP and she has not displayed any poor behavior at the time."

32. After receiving this email, Mr. Schostak began to take discriminatory actions against Ms. Patacsil, which progressively intensified.

33. On June 13, 2024, without justification or provocation, Mr. Schostak removed Ms. Patacsil from her position.

34. Ms. Patacsil's previous supervisor was Mr. David Barksdale, a DON civilian, assigned to support the Polar Security Cutter Program Office at Coast Guard headquarters.

35. Mr. Barksdale supervised Ms. Patacsil when she was a Coast Guard civilian employee.

36. Mr. Barksdale was the subject of harassment and retaliation complaints filed against him by three (3) women over the age of 40, one of whom was Ms. Patacsil.

37. Mr. Barksdale retaliated against Ms. Patacsil because of her participation in EEO activity, including Ms. Patacsil providing a sworn statement in one of the other women's complaint based on her first hand observations of harassing behavior.

38. By the end of January 2024, Mr. Schostak was acting in an openly hostile manner toward Ms. Patacsil and a third civilian employee who was also a white female (WF3) over the age of 40.

39. On January 26, 2024, Mr. Schostak fired this excepted service employee who was the Cybersecurity Manager/Information Systems Security Manager (ISSM).

40. Ms. Patacsil was a competitive service employee in the Defense Acquisition Workforce.

41. Mr. Schostak demanded that Ms. Patacsil perform the duties of the ISSM despite Ms. Patacsil not being qualified nor being assigned to this Cyberspace Workforce position in the authoritative personnel and manpower database.

42. On March 27, 2024, after months of Mr. Schostak harassing and retaliating against Ms. Patacsil, she reported this harassment to Capt. Gregory Zettler, her 3rd level supervisor.

43. Capt. Zettler was also hostile and dismissive, and took no action to address the report of harassment and retaliation.

44. Due to the inaction of Capt. Zettler, on March 29, 2024, Ms. Patacsil sent notice to the SSP Equal Employment Opportunity that she wanted to file an EEO complaint against her supervisors.

45. Ms. Patacsil met with EEO on April 1, 2024 to provide the details of the complaint.

46. Ms. Patacsil also met with Mr. Matthew Daugherty, her 2nd level supervisor, who is also a white male under 40.

47. Mr. Daugherty did not promptly implement remedial measures to effectively address Mr. Schostak's harassing and retaliatory behavior. Mr. Daugherty did not take corrective and/or disciplinary actions to ensure that such behavior did not reoccur.

48. Rather than address this complaint, Mr. Daugherty wrote a Memorandum For Record (MFR) dated April 19, 2024.

49. In this MFR, Mr. Daugherty acknowledged that "she had gone to EEO on 1 April, and she felt she was being discriminated against based on her age."

50. Mr. Daugherty further stated, "I did not perceive a genuine interest in resolving the situation quickly or at the lowest level possible."

51. Mr. Daugherty did his own inquiry, and stated, "My determination from this informal inquiry is that Mr. Schostak did not engage in misconduct or in any other inappropriate manner."

52. Rather than ensure that the workplace was free from discrimination and harassment, Mr. Daugherty simply absolved Mr. Schostak.

53. After meeting with Mr. Schostak, and four (4) months after Ms. Patacsil onboarded, Mr. Daugherty directed Mr. Schostak to place Ms. Patacsil on a Performance Plan.

54. Mr. Schostak should have provided Ms. Patacsil initial counseling and a Performance Plan within the first 30 days of her onboarding, but he failed to perform his supervisory duties by setting expectations.

55. On April 15, 2024, Mr. Schostak provided the Performance Plan, via email, while he was on leave.

56. On June 13, 2024, in retaliation for the EEO complaint, Mr. Schostak removed Ms. Patacsil from her Supervisory Position.

57. Mr. Tommy Dubois, appointed by VADM Wolfe to conduct a management inquiry, substantiated Mr. Schostak inappropriately included CDR Ponder in discussions about Ms. Patacsil's performance and conduct.

58. Mr. Dubois stated "Mr. Schostak and CDR Ponder documented many of the events as a joint effort.

59. Additionally, Mr. Schostak was in constant communications with SPHR staff to include Ms. Piper during the process and determination to reassign Ms. Patacsil to a nonsupervisory position."

60. Mr. Schostak spent significant time talking about Ms. Patacsil but not talking to Ms. Patacsil about his perception of poor performance and/or misconduct.

61. Mr. Schostak failed to perform his supervisory duties because he never counseled Ms. Patacsil nor gave her an opportunity to improve; instead, Mr. Schostak provided a false and derogatory appraisal after removing Ms. Patacsil from her position.

62. Ms. Patacsil attempted to address the harassment and retaliation by her 1st, 2nd and 3rd level supervisors to her 4th level supervisor, VADM Johnny Wolfe, Director of SSP.

63. Instead of promptly implementing remedial measures to effectively address the harassing and retaliatory behavior, on July 1, 2024, VADM Wolfe directed Capt. Zettler to place Ms. Patacsil on Immediate Administrative Leave.

64. On July 1, 2024, Capt. Zettler issued Ms. Patacsil a notice of the administrative leave, referencing SSP's civilian disciplinary policy as the only authority, with the directive to abandon her IT assets including the laptop computer in her cubicle.

65. This policy makes no statement about abandoning IT assets. This demand was made without justification.

66. On July 1, 2024, when Ms. Patacsil would not abandon her laptop computer, CAPT Zettler had her SSP workspace access suspend.

67. On July 3, 2024, Ms. Patacsil attempted to address the matter with VADM Wolfe's Pentagon supervisor.

68. VADM Wolfe's 1st level supervisor is Ms. Patacsil's 5th level supervisor: ADM Lisa Franchetti, Chief of Naval Operations (CNO).

69. ADM Franchetti's Executive Assistant, Capt. Pottenburgh admitted in a MFR email dated July 3, 2024, that Ms. Patacsil was at the Pentagon "to speak to the CNO."

70. Capt. Pottenburgh said, "That she had proof of wrongdoings at SSP and that she was being retaliated against." She wanted to bring it to the CNO's attention…she had "tried to address this situation with VADM Wolfe" and was now using her chain of command."

71. It was within Ms. Patacsil's authority to report the harassing and retaliatory behaviors to the harasser's supervisor.

72. Capt. Pottenburgh intentionally blocked Ms. Patacsil from reporting the harassing behaviors to ADM Franchetti, instead stating "I was not going to listen to her complaints/allegations. Not my business."

73. On July 3, 2024, after SSP found out Ms. Patacsil was at the Pentagon to report the harassment and retaliation by VADM Wolfe and his subordinates,

74. Ms. Suanne Carnaghi, SSP security manager, contacted the Pentagon Force Protection Agency (PFPA) and filed a false police report stating that Ms. Patacsil's employment with SSP was terminated the day prior and that her access to the Pentagon was unauthorized.

75. Ms. Carnaghi requested PFPA immediately remove Ms. Patacsil from the Pentagon and suspend her access.

76. Capt. Pottenburgh escorted Ms. Patacsil to the hallway and when PFPA arrived he "encouraged them to search her bag (if they are allowed) in search of classified material."

77. Capt. Pottenburgh made this statement without any factual support for his position.

78. While PFPA was questioning Ms. Patacsil, Capt. Pottenburgh returned to his office to call Capt. Charles McLenithan, Deputy Director SSP.

79. Capt. McLenithan made false and misleading statements to CAPT Pottenburgh who in turn relayed this false information to PFPA.

80. PFPA then escorted Ms. Patacsil out of the Pentagon and suspended Ms. Patacsil's access to the Pentagon based on Ms. Carnaghi's false information and request.

81. PFPA used excessive force when they dispatched three male police officers to escort Ms. Patacsil out of the Pentagon in a harassing manner.

82. Capt. Zettler demanded that Ms. Patacsil meet CDR Ponder on July 5, 2024, to turn over all "SSP/CPS government assets (IT equipment, Common Access Card, Building Access Card, Government Travel Card, etc.)"

83. Capt. Zettler stated, "CDR Jason Ponder will be present at the prescribed time/location to receive your assets."

84. On July 5, 2024, Ms. Patacsil went to the Washington Navy Yard to give her military retiree dependent spouse identification (ID) to the guard at the gate.

85. When the guard scanned the ID, he immediately demanded Ms. Patacsil pull over, stating the police were on their way because he "had paperwork on" Ms. Patacsil.

86. The guard would not return Ms. Patacsil's retiree dependent ID.

87. Ms. Carnaghi had made another false police report to the Washington Navy Yard police.

88. When the police arrived they demanded Ms. Patacsil give them her Virginia driver's license.

89. CDR Ponder then approached in a harassing and menacing manner which triggered a medical emergency requiring immediate medical attention. Ms. Patacsil left in an ambulance, and required emergency room medical care.

90. After successfully getting Ms. Patacsil suspended from access to the Pentagon, on July 3, 2024, Capt. McLenithan directed Ms. Carnaghi to remove Ms. Patacsil's access to classified information and eligibility to a sensitive position.

91. SSP suspended her access without a security inquiry or security investigation, and without notifying Ms. Patacsil or Defense Counterintelligence Agency.

92. Building on the house of cards, Ms. Carnaghi contacted Naval Support Activity Washington (NSAW) requesting the Commanding Officer, CAPT Ryan Gaul, issue Ms. Patacsil an order of debarment from all seven (7) NSAW installations.

93. Based on Ms. Carnaghi's false report, on July 12, 2024, Capt. Gaul issued (through Navy Legal Counsel Adam Brill) the debarment order.

94. Despite there being no preliminary inquiry, the debarment order stated "The misconduct at issue is your behavior at the Pentagon on 3 July 2024, in which it is reported that you entered into offices belonging to SECNAV, CNO, and ASN(RDA), and loudly demanded to speak to those individuals regarding the termination of your employment with Strategic Systems Programs."

95. To date of this filing, Ms. Patacsil remains an employee of Strategic Systems Programs and did not demand to speak about termination of her employment.

96. One week after Mr. Brill delivered the Debarment order the harassment continued, with Mr. Brill directing Ms. Patacsil to return to the Washington Navy to turn in all government assets to Ms. Carnaghi.

97. Complying with Mr. Brill's demand would have been in violation of the July 22, 2024 Order.

98. When Ms. Patacsil would not violate the Order, Ms. Carnaghi called her and threatened to terminate her employment.

99. On or around August 26, 2024, Ms. Carnaghi harassed Ms. Patacsil again by making a false report to Metropolitan Police Department (MPD) of Washington DC, claiming Ms. Patacsil committed theft of government property.

100. An MPD detective contacted Ms. Patacsil and stated MPD had no jurisdiction on Federal property at Washington Navy Yard but the case would remain open with Ms. Patacsil a suspect of a crime.

101. On October 1, 2024, Capt. Zettler sent an email to the entire CPS workforce and three (3) defense industry contractors stating, *"Team, Just a reminder, Ms. Erin Patacsil remains in an administrative leave status at this time. As directed previously, should she attempt to reach out you [Sic], you are not to engage in any work related discussions with her. You may refer her" to legal or HR."*

102. On more than one occasion Capt. Zettler discussed Ms. Patacsil's employment with the entire CPS workforce, none of whom are in her supervisory chain.

103. On October 7, 2024, Capt. Zettler issued Ms. Patacsil a Notice of Proposed Suspension based on the false narrative in the Pentagon on July 3, 2024.

104. Disregarding Ms. Patacsil's reply to this proposal, on November 25, 2024, Capt. McLenithan suspended Ms. Patacsil Indefinitely from her position without pay.

WHEREFORE, Plaintiff Erin Patacsil respectfully prays for judgment against Defendant as follows:

A. Reinstatement to her position

B. Pay and benefits denied during the events of this matter

C. Compensatory and punitive damages for the discrimination she suffered and the acts attempting to damage her reputation with other employees of the Defendant

D. Award of Plaintiff's attorney fees and costs

E. Grant such other and further relief in favor of Ms. Patacsil as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Erin Patacsil requests a jury trial.

Respectfully submitted,

January 24, 2025

___*/s/__James R. Klimaski*

James R. Klimaski #243543

Klimaski & Associates, P.C.
1717 N St, NW. Suite 2
Washington, DC 20036
202-296-5600
klimaski@klimaskilaw.com

Attorney for Erin Patacsil